[No. C000232. Third Dist. Feb. 28, 1989.]

KENNETH R. ANDERSON, Plaintiff and Appellant, v.
HEART FEDERAL SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

[Opinion certified for partial publication.*]

*See footnote 1, *post,* page 205.

COUNSEL

Todd A. Murray, James M. Davis, Marla J. Winterberger Jeffrey H. Graybill and Hefner, Stark & Marois for Plaintiff and Appellant.

Aaron M. Peck, Martin H. Kresse, Barbara Cray, McKenna, Conner & Cuneo, Russell P. Baldo, Chamberlain, Chamberlain & Baldo, Edmund L. Regalia, Gary E. Rosenberg, Kristine L. Cardall, Miller, Starr & Regalia, Philip M. Adleson, Hess, Christiansen & Kelly, Walter E. Stockman, Ralph T. Ferguson and Martorana & Stockman for Defendants and Appellants.

OPINION

**BLEASE, J.**—In the published portion of this opinion[1] we hold that the exercise of a power of sale in a deed of trust may not be predicated upon breaches in the payment of secured obligations which are listed in the notice of default as conditioned by "if any." These contingent assertions fail to state that a default "has occurred," as required by Civil Code section 2924,[2] and the beneficiary cannot insist that such equivocal "defaults" be cured as a condition of avoiding a foreclosure sale.

Defendants were granted a summary judgment on the theory that plaintiff (Anderson) failed to tender a sum sufficient to reimburse foreclosure costs and to cure the arrearages in principal, interest, and late charges on the loan secured by the deed of trust held by Heart Federal Savings (Heart), plus delinquent taxes and insurance premiums, in the total amount then due on the date of the foreclosure sale. Heart listed failure to pay taxes and advances for insurance premiums as grounds of default in the recorded notice of default but appended the qualifying phrase "if any" to the assertions. Heart cannot predicate the exercise of a power of sale upon these contingencies and therefore cannot insist upon the payment of taxes and repayment of advances for insurance premiums as conditions of reinstating the loan.

This holding compels reversal of the summary judgment granted defendants in Anderson's action to set aside the sale of his real property. The only breach which the notice of default properly asserts as having occurred is Anderson's failure to make timely payments of the principal and interest owed Heart under the deed of trust. There is a triable issue of fact whether Anderson's tender of payment at the foreclosure sale was sufficient to satisfy the accrued amount of this default.

For these reasons we will reverse the judgment.

---

[1] The Reporter of Decisions is directed not to publish part V of the Discussion.
[2] All references to sections are to the Civil Code unless otherwise noted.

## Facts and Procedural Background

Anderson was obliged to make payments to Heart on a promissory note in the amount of $120,000. The obligation was secured by a deed of trust on a parcel of land Anderson owned in Placer County. On February 3, 1984, the trustee, defendant First American Title Insurance Company (First American), at the request of Heart, recorded a notice of default under the deed of trust. The notice commences with the statement required by section 2924c, subdivision (b)(1),[3] and in the blank provided for the reinstatement amount is listed $14,878.99, as of January 30, 1984. (This amount apparently only includes principal, interest, and late charges.) Thereafter the notice gives as the nature of the breach of the obligation occasioning the default: "payment has not been made of: payment of principal and interest which became due on April 15, 1983; all subsequent installments which become due; delinquent taxes and/or assessments, if any; late charges, if any; proof of current hazard insurance, if applicable; advances, if any; interest on such advances. . . ."

On April 25, 1984, Todd Murray, an attorney representing Anderson, sent a letter to Heart asking for written confirmation of an agreement "that

---

[3] Section 2924c, subdivision (b)(1) provides in pertinent part: "The notice, of any default described in this section, recorded pursuant to Section 2924, and mailed to any person pursuant to Section 2924b, shall begin with the following statement, printed or typed thereon:

"'IMPORTANT NOTICE [ ]

"IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, [ ] and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is _____ as of _____ , and will increase until your account becomes current. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay the amount stated above. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2). [¶] Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. [¶] To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

"(Name of beneficiary or mortgagee)

"(Mailing address)

"(Telephone)' "

[Heart] will accept the amount in default right up to the day of sale without requiring full payment of the entire balance to reinstate the loan and avoid a sale." On April 27 Dayne Crawford, a Heart vice-president, signed the acknowledgment of the agreement.

The trustee's sale was set for June 4, 1984. Sometime prior to May 22 Murray telephoned Crawford to ascertain the amount of arrearages. Murray's notes concerning the conversation reflect that he was told the amount was $33,372.39; of this amount $20,961.03 was attributable to 14 note payments and late charges; $90 to insurance; and $409 to attorneys' fees. As to the residual $11,912.36 Crawford said he was not sure what it included, but he thought it was attributable to such things as foreclosure fees and taxes. Anderson had already arranged to borrow $11,000. He was informed of the $33,000 figure and sought to borrow $25,000 from California Equity to meet this demand.

Sometime later Murray again talked with Crawford and was informed that the amount necessary to reinstate was approximately $40,000. Murray testified that Crawford was uncertain of the breakout. Murray wrote a letter to Heart on May 22 which he believes was a response to this conversation. In the letter Murray asked for a written accounting restricted to those items properly chargeable for reinstatement. No written accounting was ever provided.

On June 1 Murray had a letter delivered to First American requesting a postponement of sale "under the provisions of California Civil Code section 2924 [g, subdivision] (c)(1), in order to permit the trustor to obtain cash sufficient to satisfy the obligation." First American postponed the sale until 10 a.m. on June 5th. On the morning of June 5th at approximately 8:30 a.m. Murray telephoned Heart representatives and requested that they accept $25,000 in return for postponing the sale for two weeks so that Anderson could obtain the remainder of the funds demanded.

Heart declined the proposal but told Murray that if Anderson came up with the necessary arrearages prior to 10 a.m. Heart would abort the foreclosure.

Crawford participated in a portion of this discussion. He then wrote a file memo. The memo says that Murray's position was that "arrearages [meant] the actual back payments plus late charges and did not include any of the other charges (i.e. advances for [insurance], legal expense, taxes and foreclosure fees)." Crawford's position was "[w]hen I signed the statement on 4-27-84 agreeing to accept *all* arrearages up to the sale date under foreclosure,.it was my understanding that arrearages [meant] all costs due us plus any we had advanced plus trustees fees. At [no] time was anything different discussed or referred to."

At 9:30 a.m. on June 5th Heart informed First American that it had an agreement with Anderson to accept a cure of the default up to the time of the sale. Heart told First American that the amount necessary was $40,213.10. At the time set for the sale a First American representative, a Heart representative, two prospective bidders, and Murray were present. Murray announced that he was protesting the sale and tendered to First American a check for $14,000 drawn on his law firm's client's trust account and a letter directing First American to disburse to Heart $11,000 that had been deposited in a First American escrow account. The representatives for First American and Heart each declined the tender. Thereafter, the subject property was sold to defendant Gina, Inc. (Gina) on a highest bid of $192,500.

After the sale Anderson filed his complaint in this action seeking damages and to set aside the sale on the ground of alleged improprieties. The specification of improprieties includes (1) that Heart failed to provide an accounting upon request, (2) that Heart refused to accept Anderson's $25,000 tender which was sufficient to defray the arrearages due under the agreement, (3) that the notice of trustee's sale fraudulently claimed $8,925.69 as estimated costs, and (4) that Gina obtained but did not serve a temporary restraining order to halt the trustee's sale to induce Anderson to rely thereon so that Gina could purchase the subject property below market value.

Defendants filed a joint motion for summary judgment or summary adjudication of issues. They contended that summary judgment was warranted because: Anderson's tender was improper in form and insufficient in amount to defray the arrearages. They contended that, in any event, the sale could not be set aside because Gina is a bona fide purchaser. They contended that a constructive trust could not be imposed upon Gina under the theory of reliance upon the temporary restraining order, because the uncontroverted evidence established no misrepresentation by Gina or detrimental reliance by Anderson.

Anderson's opposition to the motion for summary judgment was presented as a counter-motion for summary judgment and supporting papers which apparently are to do dual service. In pertinent part Anderson contended that Heart should be denied summary judgment because: the $25,000 tendered was in a proper form and adequate in amount to reinstate the loan under the agreement with Heart; and, if not, he was excused from the obligation to tender any greater amount because of Heart's incorrect demand for $40,000 to reinstate the loan. As to the claim of bona fide purchase, Anderson contended that Gina purchased subject to his claim of proper tender because it had notice of this claim. Anderson admitted that Gina did not represent that it would serve the restraining order to halt the

sale and that he had not flagged in his efforts to obtain funds in reliance on that prospect.

The trial court granted defendants' motion for summary judgment, saying, "Basically there is no factual dispute." A judgment was entered in favor of defendants, from which Anderson appeals.

## DISCUSSION

### I

At issue in the published portion of this opinion is whether the trial court erred in granting a summary judgment in favor of Heart because Heart failed to establish as undisputed that Anderson's tender of $25,000 was not sufficient in amount to cure the noticed default. For reasons which follow the sufficiency of that amount turns on the nature of the default to be cured and on the adequacy of Heart's representations to Anderson of the amounts due on principal and interest and foreclosure costs. (We include late charges within these amounts since Anderson apparently conceded these charges were a condition of curing the default under the agreement with Heart.)

An inference can be drawn from the papers submitted in the summary judgment proceeding that the amount tendered by Anderson was sufficient to pay the foreclosure costs plus the principal and interest then owed Heart under the deed of trust. This inference is predicated upon the amounts which Heart informed Anderson were due on such obligations and Heart's failure to provide Anderson with a statement showing that any greater amount was due. Heart replies that the amount tendered was less than the sum of the amount Anderson concedes was owing on the note *plus* the amount of delinquent taxes then owing on the property. That puts in issue whether delinquent taxes may be considered as a ground of default and hence whether their payment may be made an additional condition of curing the default.

We will conclude that the summary judgment was incorrectly granted. The sum tendered by Anderson was greater than the last amounts which Heart informed Anderson were attributed to principal, interest and foreclosure costs. Those amounts are all that Heart was entitled to demand. Neither delinquent taxes nor advances for insurance can be included in the amounts which must be paid as a condition of aborting the foreclosure proceedings because they were not identified in the notice of default as an obligation which Anderson had failed to pay, as required by section 2924.

### II

This case was commenced as a suit in equity by Anderson to set aside the foreclosure sale, the traditional method by which a nonjudicial foreclosure

sale is challenged. (See *Munger* v. *Moore* (1970) 11 Cal.App.3d 1, 6 [89 Cal.Rptr. 323]; see also *System Inv. Corp.* v. *Union Bank* (1971) 21 Cal.App.3d 137 [98 Cal.Rptr. 735]; *Tomczak* v. *Ortega* (1966) 240 Cal.App.2d 902 [50 Cal.Rptr. 20].) ■ The party seeking to set aside the sale has the burden of pleading and proof at trial of improper procedure and consequent prejudice. (See e.g., *Sargent* v. *Shumaker* (1924) 193 Cal. 122, 131-133 [223 P. 464]; Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) § 6.58.) Nonetheless, in a summary judgment proceeding the burden is on the moving party defendant to show that there is no triable issue of material fact with respect to matters put in issue by the complaint and that the facts adduced in the summary judgment proceeding entitle the defendant to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

"A defendant's motion for summary judgment addresses the legal question whether there are undisputed *material* facts which foreclose the plaintiff's right to relief. (Code Civ. Proc., § 437c; see *Pultz* v. *Holgerson* (1986) 184 Cal.App.3d 1110, 1114 [229 Cal.Rptr. 531].) ■ Materiality is measured by the law applicable to the legal theories put in issue by the complaint. (*Ibid.*)" (*Panattoni* v. *Superior Court* (1988) 203 Cal.App.3d 1092, 1094 [250 Cal.Rptr. 390], original italics; see also *Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 604-605 [208 Cal.Rptr. 899].)

Two issues are material to the resolution of the summary judgment. First, were delinquent taxes properly noticed in the notice of default so that they may be included within the sum which Anderson must pay in order to cure the default? Second, if not, is there a triable issue of fact whether the tender of payment by Anderson was sufficient to cure the default in the payment of principal, interest and foreclosure costs. Resolution of the first issue is a matter of law governed by sections 2924 and 2924c. (On the evidence before us the agreement between Heart and Anderson simply extends the period of application of these statutes.) Resolution of the second issue is also governed by these sections and turns (a) on the adequacy of the information given Anderson by Heart of the amount due at the time of foreclosure sale necessary to cure the default in principal, interest, and foreclosure costs and (b) whether the papers submitted at the summary judgment proceeding show that there is a triable issue of fact of the insufficiency of the tender of the amount properly noticed.

We consider the issues seriatim.

## III

### The Validity of Conditional Language of Default

#### A.

"The procedure for foreclosing on security by a trustee's sale pursuant to a deed of trust is set forth in Civil Code section 2924 et seq. ■ The statutory requirements must be strictly complied with, and a trustee's sale based on statutorily deficient notice of default is invalid." (*Miller* v. *Cote* (1982) 127 Cal.App.3d 888, 894 [179 Cal.Rptr. 753], relying on *System Inv. Corp.* v. *Union Bank, supra,* 21 Cal.App.3d at pp. 152-153; see also *Sweatt* v. *Foreclosure Co.* (1985) 166 Cal.App.3d 273, 278 [212 Cal.Rptr. 350].) ■ The beneficiary is "bound by [its] notice of default. . . . [and] cannot insist upon any grounds of default other than those stated in that notice." (*Tomczak* v. *Ortega, supra,* 240 Cal.App.2d at p. 904.) ■ If the *"Particular default"* noticed is cured the deed of trust must be reinstated. (*Ibid,* italics in original.)

■ In his complaint Anderson admitted that the deed of trust secured an obligation to pay principal and interest but alleged that his tender was sufficient to cure the amounts owing on that obligation. We defer for later consideration whether there is a triable issue of that fact. Assuming that Anderson prevails on that issue, the lawfulness of the sale turns on the lawfulness of the inclusion of delinquent taxes in the amount deemed necessary to cure the default, for it appears that Anderson did not tender an amount sufficient to pay principal, interest, foreclosure costs and delinquent taxes.

#### B.

■ "The provisions of section 2924 of the Civil Code with reference to inclusion, in the notice of default, of a statement setting forth the nature of the breach 'must be strictly followed.' (*Bisno* v. *Sax* [1959] 175 Cal.App.2d 714, 720 [346 P.2d 814].) The person relying upon the notice of default is 'bound' by its provisions, and 'cannot insist upon any grounds of default other than those stated in that notice.' (*Tomczak* v. *Ortega,* 240 Cal.App.2d 902, 904 [50 Cal.Rptr. 20].)" (*System Inv. Corp., supra,* 21 Cal.App.3d at pp. 152-153.)

This holding is anchored in the language of section 2924. It provides that a power of sale in a deed of trust "shall *not* be exercised" until the beneficiary shall first file for record "a notice of default, identifying the . . . deed of trust . . . and containing a statement that *a breach* of the obligation for which such . . . transfer in trust is security *has occurred,* and setting forth the nature of such breach . . . ." (§ 2924, italics added.) This man-

dates, as a condition for the exercise of the power of sale, that the beneficiary identify the obligation made a ground of the default and assert that a breach of the obligation has *in fact* occurred.

Section 2924 requires that the notice of default must contain the ground of default and section 2924c specifies the means for curing a default so noticed. Consistent with the notice required by section 2924, section 2924c, subdivision (a)(1)[4] provides the means of cure "[w]henever . . . the principal sum of any obligation secured by deed of trust" has been declared due "[*a*] by reason of default in payment of interest or of any installment of principal, or [*b*] by reason of failure . . . to pay . . . taxes, assessments, [or] premiums for insurance . . . ." The trustor may cure the default by timely payment of "the entire amount then due" plus costs and expenses incurred in enforcing the obligation except that, with respect to principal owed, the trustor need not pay "the portion of principal as would not then be due had no default occurred . . . ." The consequence of such a cure is that "all [foreclosure] proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust . . . shall be reinstated . . . ." (§ 2924c, subd. (a)(1); also see *Tomczak, supra,* 240 Cal.App.2d at pp. 903-904.)

In sum, to cure a default, the trustor must timely pay the entire "amount then due" the beneficiary, attributable to a breach of an obligation which justifies the exercise of a power of sale, to wit, a breach which the notice of default states *has occurred*. The "amount then due" includes the amounts that have accrued on the obligation since the filing of the notice of default.

---

[4]Section 2924c, subdivision (a)(1) provides: "Whenever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property hereafter executed has, prior to the maturity date fixed in such obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal, or by reason of failure of trustor or mortgagor to pay, in accordance with the terms of such obligation or of such deed of trust or mortgage, taxes assessments, premiums for insurance or advances made by beneficiary or mortgagee in accordance with the terms of such obligation or of such deed of trust or mortgage, the trustor or mortgagor or his successor in interest in the mortgaged or trust property or any part thereof, or any beneficiary under a subordinate deed of trust or any other person having a subordinate lien or encumbrance of record thereon, at any time within the period specified in subdivision (e), if the power of sale therein is to be exercised, or, otherwise at any time prior to entry of the decree of foreclosure, may pay to the beneficiary or the mortgagee or their successors in interest, respectively, the entire amount then due under the terms of such deed of trust or mortgage and the obligation secured thereby (including reasonable costs and expenses, subject to subdivision (c), which are actually incurred in enforcing the terms of such obligation, deed of trust or mortgage, and trustee's or attorney's fees, subject to subdivision (d)), other than the portion of principal as would not then be due had no default occurred, and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if no such acceleration had occurred. This section does not apply to bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations or made by a public utility subject to the Public Utilities Code."

## C.

The notice of default conditions the claims of breach of the obligations to pay taxes (and advances for insurance) with the proviso "if any." This qualifier, which claims only a potential ground of default, does not square with the requirement of section 2924 that the notice identify a breach which "has occurred." That requirement is necessary to the invocation of the power of sale which "shall not be exercised . . . until" the notice requirements have been met.

Absent a belief the trustor is in breach with respect to an obligation contained in the deed of trust, it is improper to assert such a breach in a notice of default. Adding the qualifier "if any" (or "if applicable") to an assertion of default indicates the party claiming default has no knowledge of the truth or falsity of the assertion. One might as easily add the rote assertion that the trustor is in breach of every variety of payment obligation under the deed of trust, "if any." This would permit evasion of the statutory mandate which conditions the exercise of the power of sale by perfunctory boilerplate.

Our view may appear to be in conflict with a footnoted dictum in *Little* v. *Harbor Pacific Mortgage Investors* (1985) 175 Cal.App.3d 717 [221 Cal.Rptr. 59]; however, the conflict is more apparent than real. *Little* upheld the contention of the trustor that the beneficiary could not refuse a tender to cure a default for failure to include an amount of a delinquency on a senior lien because this kind of breach had not been asserted in the notice of default. However, the court rejected the trustor's broader contention that each time the beneficiary made a payment to a third party, (increasing the amount owed directly to the beneficiary) a new notice of default is required. The court reasoned as follows. "The purpose of the statute is to put the debtor on notice as to *which breaches* the lienholder wishes cured. It would be sufficient if the original notice includes a specific reference to the obligation. Here, for example, the notice indicates Harbor will look to the Littles for delinquent taxes, if any. Thus, the notice would have been sufficient if it had also indicated a reference to delinquent payments, if any, on the first." (*Little, supra,* 175 Cal.App.3d at p. 721, fn. 6; original italics.)

We agree with *Little* that the trustor's broader contention was incorrect. Section 2924c specifically provides that, if the nature of default has properly been noticed, the delinquency may be cured by payment of the amounts "then due" arising from the default, i.e., amounts attributable to the initial default. If (say) the beneficiary stated as a ground of default that a breach of an obligation to pay a third party had occurred, the beneficiary could insist on reimbursement for *its* payments of that obligation, made on behalf of the trustor, as a condition of reinstatement. (See *post,* fn. 6.) However, we do

not agree with the unexamined assumption that "if any" language in a notice of default is sufficient to comply with the pertinent statute's purposes. As *Little* acknowledges, the rule it applied is bottomed on the *statutory* requirement that "the notice must '[set] forth the nature of such breach.'" (175 Cal.App.3d at p. 721.) Contrary to *Little* the statute which contains this language is section 2924, not section 2924c. (*Ibid.*) *Little's* cursory treatment of these statutes fails to carefully consider their language. There is no indication that the court in *Little* considered the question of compliance of a conditional assertion of default with section 2924. The opinion simply employed the language of the notice of default that happened to be before it. This is not a construction of the statute.[5]

Section 2924 provides that the "power [of sale] shall *not* be exercised . . . *until*" the notice of default, stating that a breach of an obligation "has occurred," has been recorded. (Italics added.) ■ The purpose is to put the beneficiary to the task of ascertaining the *existence* of a breach before the invocation of the power of sale and the trustor on notice of the obligations the beneficiary contends *have been* breached. An assertion of a breach *"if any"* utterly fails those purposes.

The reasons for the statutory requirements limiting the scope of restitution demands to actual breaches are easy to discern. The exercise of the power of sale is a "harsh method of foreclosing the rights of the grantor" (*System Inv. Corp., supra,* 21 Cal.App.3d at p. 153) and should not be exercised until the beneficiary has ascertained that a breach of an obligation justifying its employment has in fact occurred. There is no good reason why the beneficiary should not list all breaches existing at the time of notice of default which it contends are grounds of default. Failure to assert an exist-

---

[5] Heart and First American argue that in view of *Little's* footnote we should hold that our ruling is only applicable to future default proceedings. They claim that the "if any" mode was approved in *Little*, has been widely used, and application of the holding to notices of default isued prior to the opinion will cast doubt on a large number of titles derived from foreclosure sales under these notices. The claim has no application to the parties in this case. They can hardly have been misled by *Little* since it was not published until almost two years after the notice of default in this case was recorded.

As to post-*Little* transactions, the argument characterizes our construction of section 2924 as overruling *Little*. The characterization is dubious since *Little* promulgated no rule on this topic. Nor has the question been adequately briefed. The sketchy supporting argument pays no attention, inter alia, to important differences between our role in making common law and our role in construing statutes. (See e.g., Snyder, *Restrospective Operation of Overruling Decisions* (1940) 35 Ill.L.Rev. 121.) Moreover, it appears that in order for this defect to impair title obtained in a foreclosure sale the mortgagor must: (a) tender the amount required to cure breaches that were properly asserted in the notice of default; (b) place the purchaser on notice of the claim of sufficient tender; and (c) diligently pursue an action to set aside the foreclosure sale. It seems likely that the number of such claims cannot be significant. For all the foregoing reasons, we apply the holding to this case and leave the question of prospective application for resolution on a properly developed factual record in a subsequent case—if any.

ing breach renders the notice ambiguous concerning the position of the beneficiary. There are breaches about which a beneficiary may be indifferent because they do not significantly impair the security, e.g., the failure to pay taxes where the value of the property greatly exceeds the obligation secured by the deed of trust. The beneficiary may elect to ignore such a breach while insisting on compliance with the obligation to pay principal and interest.
■ From all that appears in this case Heart had no idea at the time of the notice of default whether or not Anderson was in default of his obligation to pay taxes or advances for insurance premiums. Nor does it appear that Heart at the outset would have exercised a power of sale solely upon the ground of such a default.

Heart may not predicate the power of sale upon delinquent taxes (or repayment of advances for insurance premiums) for the reasons set forth above and consequently may not demand their payment as a condition of a cure of the default in the payment of principal and interest.

## IV

■ That leaves the question whether Anderson tendered a sufficient amount at the foreclosure to cure the default in the payment of principal and interest "then due" and foreclosure costs. Anderson tendered $25,000 in the form of a check for $14,000 and a letter directing payment of $11,000 deposited in an escrow account. The adequacy of the tender is dependent upon an accurate calculation of the amounts due. The totals given Anderson by Heart are complicated by its slipshod attempts to determine the amounts owing and its undifferentiated inclusion of amounts attributable to delinquent taxes and advances for insurance premiums.

The obligation of the beneficiary to provide the trustor with an accurate accounting of the amounts due to cure a default is governed by statute. Section 2924 specifies that a copy of the notice of default must be sent to the trustor together with "the statement specified in paragraph (1) of subdivision (b) of Section 2924c" that the trustor may have "the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law" and informs him that: "This amount is _____ as of (date) . . . ." (§ 2924c, subd. (b)(1); ante, fn. 3.) ■ The provision is silent with respect to the payee and is broad enough to encompass payments due both beneficiary and third parties.[6]

---

[6] Section 2924c does not expressly address the means of cure of an obligation requiring payment to a third party. Since the notice of default required by section 2924 contemplates such a cure, section 2924c should be read as implicitly recognizing that such a cure may be effected by timely payment to the third party.

The nature of the obligation breached and the beneficiary's actions may affect the manner in which the obligation is satisfied. "[T]rust deeds [commonly] permit the beneficiary to pro-

██  The mode and current amount of payment is the subject of subdivision (b)(1) of section 2924c, which section 2924 requires be incorporated in the notice of default. "To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: _____ . . . ." This language encompasses both the circumstance in which amounts are due the beneficiary, including amounts advanced by the beneficiary to a third party, and the circumstance in which payment is due a third party. Compliance with this provision necessarily requires that the beneficiary provide accurate information in response to an inquiry by the trustor.

The pertinent facts bear repeating. In the default notice Anderson was informed that the reinstatement amount as of January 30, 1984, was $14,878.99. The trustee's sale was set for June 4, 1984. Sometime prior to May 22 Anderson's attorney, Murray, telephoned Crawford, a Heart vice-president, to ascertain the amount of arrearages. Murray's notes concerning the conversation reflect that he was told the amount was $33,372.39; of this amount $20,961.03 was attributable to 14 note payments and late charges; $90 to insurance; and $409 to attorneys' fees. As to the residual $11,912.36 Crawford said he was not sure what it included, but he thought it was attributable to such things as foreclosure fees and taxes. Anderson had already arranged to borrow $11,000. He was informed of the $33,000 figure and sought to borrow $25,000 from California Equity to meet this demand.

Sometime later Murray again talked with Crawford and was informed that the amount necessary to reinstate was approximately $40,000. Murray testified that Crawford was uncertain of the breakout. Murray wrote a letter to Heart on May 22 which he believes was a response to this conversation. In the letter Murray asked for a written accounting restricted to those items properly chargeable for reinstatement. No written accounting was ever provided.

Heart admits that its ultimate demand of $40,000 was overstated by approximately $6,700. However, it has proffered no accounting for the lesser figure of approximately $33,000 which it suggests (by way of its briefs) was owed. On this record, there is no way to discern what portion, if

---

tect his security by making any of [the third party payments, e.g., payments of property taxes to a county, payments of fire insurance premiums to the insurer] if the trustor fails to do so, in which event the trustor promises to reimburse the beneficiary 'immediately,' together with interest. The beneficiary can declare a default for the trustor's failure to make reimbursement and can add these sums, together with interest, to his demand in the event of reinstatement or sale." (1 Miller & Starr, Current Law of Cal. Real Estate (1975) § 3.102, p. 506.) In that event the sums advanced are due the beneficiary. If the beneficiary has not advanced the required sums and a breach is predicated upon the failure to pay them to a third party, the sums are not due the beneficiary and the breach may be cured only by payment to the third party.

any, of Heart's demand for $33,372.39 was in fact attributable to a claim of tax delinquency existing at the time of the notice of default. Wholly unexplained are substantial charges ($6,702.84) included in Heart's directions to First American for alleged advances for insurance several years previous to the notice of default.

█ The adequacy of the tender turns on the amount owed and the burden is placed on Heart by sections 2924 and 2924c to inform Anderson correctly about the amounts "then due" on the obligations properly noticed in the notice of default and the foreclosure costs. This information is in the possession of the beneficiary. Anderson is under no obligation to second-guess the amount. Given that information he is required to project the amount presently due and to tender that amount as a cure of the default. If the tender falls short in a sum attributable to the failure of the beneficiary to carry its burden of providing the trustor with accurate information, the trustor is entitled to prevail on the merits.

█ The last information given Anderson, in the month preceding the foreclosure sale, concerning the amounts "then due" for principal and interest and foreclosure costs was that there was "then due" some $21,000 in principal and interest and $409 in attorney fees. The sum which Anderson tendered ($25,000) exceeds this amount and most probably exceeds the additional amounts accruing to the date of sale. If these are the sole facts tendered at trial, Anderson should prevail on the merits of the issue of sufficiency of the amount of tender. That being the case Anderson obviously has shown a triable issue of fact of proper tender requiring that the summary judgment be vacated.

V*

. . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed.

Evans, Acting, P. J., and Deegan, J.,† concurred.

The petitions for a rehearing were denied March 28, 1989, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied May 23, 1989.

---

*See footnote 1, *ante,* page 205.
†Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.