Filed 10/31/13  Grewe v. Clark CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARL F. GREWE et al., | |
| Plaintiffs and Appellants, | G047430 |
| v. | (Super. Ct. No. 30-2010-00415013) |
| JOYCE CLARK et al., as Trustees, etc. | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Appeal dismissed in part; judgment affirmed.

Darling & Risbrough, Ronald E. Darling and Sherilyn Learned O'Dell for Plaintiffs and Appellants.

Nassie Law, Daniel A. Nassie and Catherine J. Rowlett for Defendants and Respondents.

Carl F. Grewe appeals from a judgment denying his challenge to the validity of a trustee's sale of real property following a nonjudicial foreclosure. Grewe's co-plaintiff, Two Doheny, LLC, also purports to appeal, but without acknowledging the trial court expressly found it lacked standing in the case, and without challenging that express finding. We consequently dismiss Two Doheny, LLC's appeal for lack of standing.

Grewe contends the judgment must be reversed because: (1) the property consisted of several "known lots," and the trustee failed to sell each lot separately as required by Civil Code section 2924g; (2) The trustee improperly conditioned reinstatement of the loan on Grewe's performance of obligations not specified in the notice of default; and (3) the trustee failed to publish notice of the sale in accordance with the requirements of Civil Code section 2924f. We reject each of these assertions and affirm the judgment.

FACTS

The property at issue in this case (the property), located in Dana Point, contains a "historically significant structure" known as the Doheny House. The property was subdivided in 1909, and according to its legal description, consists of two separate parcels, one of which contains five numbered "lots." The Doheny House structure spans at least three of those lots. However, none of those identified lots has ever been certified as complying with the requirements of the Subdivision Map Act (Gov. Code, § 66410 et seq.)

In August 2007, Grewe, the owner of the property, borrowed $350,000 from Joyce and Dean Clark, acting as trustees of the C Dean Clark and Joyce Clark Family Trust (the Clarks). That loan was secured by a second deed of trust on the

2

property (the second trust deed). The first deed of trust on the property was executed by Grewe in 2005, and secured a loan in the amount of $2,975,000.

In addition to obligating Grewe to make the required payments on the loan, the second trust deed also expressly obligated him to "perform all of [his] obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including [his] covenants to make payments when due." Grewe was also obligated to "pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which might attain a priority over this Deed of Trust."

The second trust deed provided that if Grewe breached any of his specified obligations, the Clarks had the right to declare a default and if Grewe failed to cure that default in a timely manner, to accelerate the sums due under the trust deed. However, notwithstanding such acceleration, Grewe would still have the right to reinstate the loan if, at least five days prior to a noticed sale of the property, he: (1) paid all sums that would have been due absent acceleration; (2) cured all breaches of any other covenants or agreements contained in the second trust deed; and (3) paid all expenses incurred by the lender and trustee in enforcing the lender's remedies under the second trust deed.

Following the execution of the second trust deed, Grewe transferred title of the property to Two Doheny, LLC. Around November 2008, Grewe ceased making payments on either the first or the second trust deeds on the property. In January 2009, the trustee retained by the Clarks to conduct a nonjudicial foreclosure of the property served Grewe with a notice of his default and of the Clarks' election to sell the property under the second trust deed.

Utilizing the required language set forth in Civil Code section 2924c, subdivision (a)(1), the trustee's notice informed Grewe that the property was in foreclosure because he was behind in his payments, but that he may have the right to bring his account in good standing by paying the total of all past due payments. It then

3

specified that the amount of his past due payments under the second trust deed was $10, 312.67 as of January 16, 2009, and would increase until the account was brought current. Then, continuing with the mandatory statutory language, the notice further informed Grewe that "the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums."

When the notice of default was served, Grewe was delinquent in both his obligation to pay under the first deed of trust and his obligation to pay property taxes on the property.

The trustee originally scheduled the foreclosure sale to take place on May 14, 2009. On April 16, 2009, Grewe met with a representative of the trustee, and told the representative he wished to reinstate the loan. The representative informed him that the amount required to bring the account into good standing as of that date was $22,840.19, but that the loan would not be reinstated unless he also provided proof that the first deed of trust had been brought current and the taxes on the property had been paid. Grewe did not tender payment.

The day before the sale was originally scheduled to take place, Two Doheny, LLC filed bankruptcy. The sale was postponed due to the bankruptcy filing, and thereafter postponed from time to time during the pendency of the bankruptcy proceeding. Finally, after a motion for relief from the bankruptcy stay was granted, the trustee's sale of the property took place on December 29, 2009. No other bidders appeared at the sale, and the property was sold as a single parcel to the Clarks, for a full credit bid.

The complaint, which named both Grewe and Two Doheny, LLC as plaintiffs, was filed in October 2010. It alleged causes of action for wrongful foreclosure based specifically on violations of Civil Code sections 2924g and 2924c. It also alleged a cause of action for slander of title, and one for intentional misrepresentation based on an

4

allegation that Joyce Clark had deliberately mislead Grewe about the status of the sale in the immediate wake of the order granting relief from the bankruptcy stay. In addition to both compensatory and punitive damages, the complaint sought declaratory relief and to quiet title to the property.

The case was tried without a jury in December 2011. On February 2012, the court issued a detailed written decision in favor of the Clarks.

DISCUSSION

*1. Requirement That Property be Sold as Separate Lots (Civil Code Section 2924g)*

Grewe first argues the judgment must be reversed because the trustee's sale did not comply with the requirements of Civil Code section 2924g, subdivision (b), which specifies that "[w]hen the property consists of several known lots or parcels, they shall be sold separately unless the deed of trust or mortgage provides otherwise." As Grewe points out, the legal description of the property reflects it consists of two separate parcels, one of which is described as encompassing five numbered "lots." Grewe acknowledges the second deed of trust provides that if the lender invokes the power of sale, the property may be sold "in one or more *parcels* and in such order as Trustee may determine" (italics added), but asserts there was no waiver of what he claims is a distinct statutory obligation to sell any known *lots* separately. Consequently, he claims the trustee was obligated to sell each of the numbered lots individually. The argument is unpersuasive.

In rejecting this same contention below, the trial court expressly concluded that the five identified lots "could not have been sold separately," and thus that selling them together was not a violation of the statute. We agree.

The mere fact that the legal description of this property reflects it contains five separate "lots" does not demonstrate that any of those designated lots qualified as

5

separately saleable properties. The Subdivision Map Act (Gov. Code, § 66410 et seq., (the Act)), which went into effect in 1975, sets forth the requirements for subdivision of a parcel, providing that it "may be lawfully accomplished only by obtaining *local approval and recordation of a tentative and final map pursuant to [Government Code] section 66426*, when five or more parcels are involved, *or a parcel map pursuant to [Government Code] section 66428* when four or fewer parcels are involved." (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 997, italics added.) The Act expressly "prohibits the sale, lease, financing or improvement of any parcel or parcels of real property for which a final map or parcel map is required under the Act unless a final map or parcel map has been recorded." (*Abernathy Valley, Inc. v. County of Solano* (2009) 173 Cal.App.4th 42, 48 (*Abernathy*).) There is no evidence that either a final map or a parcel map designating these lots was ever approved or recorded in accordance with those statutes.

The Act does contain a "grandfather provision" (*Abernathy, supra*, 173 Cal.App.4th at p. 49), which allows recognition of certain subdivisions established prior to the effective date of the Act, such as the one Grewe apparently relies on here, but only if that earlier subdivision was either "in compliance with or exempt from any law (including a local ordinance), regulating the design and improvement of subdivisions in effect at the time the subdivision was established." (Gov. Code, § 66499.30, subd. (d).) As reflected in *Abernathy*, however, the mere designation of a "lot" within a parcel map recorded before the effective date of the Act is insufficient to demonstrate that a subdivision falls within that grandfather provision.

In *Abernathy*, a property owner sought a writ of mandate to compel the county to issue a "certificate of compliance" (*Abernathy, supra*, 173 Cal.App.4th at p. 45), reflecting that one of 25 lots identified on a parcel map recorded in 1909 was in compliance with the requirements of the Act and thus could be legally sold as a separate parcel. In reversing the trial court's grant of relief, the appellate court explained that "even assuming Lot 12 was 'established' when the Pierce Map was recorded in 1909"

6

(*id.* at p. 51), the subdivision law in effect at that time was insufficiently detailed to qualify as one which "'regulat[ed] *the design and improvement* of subdivisions." (*Ibid.*) Consequently, the court could not certify those lots as in compliance with the Act.

Here, it is undisputed that none of the lots identified on the property, also purportedly subdivided in 1909, has been certified as being in compliance with the Act. Absent such evidence, there is no substantial, let alone compelling, evidence these "lots" *could have* been legally sold separately. Stated simply, absent compliance with the Act, these are "lots" in name only. For purposes of *sale* – and thus for purposes of Civil Code section 2924g, which regulates a trustee's sale of property under a power of sale, they do not qualify as "known lots" which "shall be sold separately." The trial court did not err.

*2. Obligation to Specify all Conditions of Reinstatement in Notice of Default*

Grewe next contends the trustee sale was flawed because the notice of default served on him did not specify *the amount* he would have to pay to bring the first trust deed and tax payments current, and thus that the trustee was not entitled to demand evidence of his compliance with *those obligations* as a condition of reinstating the loan. Grewe claims it was the trustees' improper demand for that evidence of compliance which prevented him from tendering the necessary payment to reinstate the loan in a timely fashion.

In making this argument, Grewe relies on *Anderson v. Heart Federal Savings and Loan Assn.* (1989) 208 Cal.App.3d 202 (*Heart Federal*), in which the court ruled that notifying an obligor that the amount he was required to pay to reinstate a loan would include past due tax and insurance payments, *if any*, was improper, because the "'if any'" qualifier "does not square with the requirement of section 2924 that the notice identify a breach which 'has occurred.'" (*Id.* at p. 213.) The court explained that "[a]bsent a belief the trustor *is in breach* with respect to an obligation contained in the

7

deed of trust, it is improper to assert such a breach in a notice of default." (*Ibid.,* italics added.)

However, Grewe fails to acknowledge that *Heart Federal* was superseded by a revised version of section 2924 in 1990. Section 3 of Statutes 1990, chapter 657 provides: "It is the intent of the Legislature in enacting this act to supersede the holding in *Anderson v. Heart Federal Savings*, [*supra*,] 208 Cal.App.3d 202, to the extent that decision restricted the ability of mortgagees and beneficiaries under trust deeds to demand payment of all amounts in default under the terms of an obligation secured by a mortgage or trust deed as a condition to reinstatement of the obligation and avoidance of a sale of the security property to satisfy the obligation."

The revised version of Civil Code section 2924c, enacted following the *Heart Federal* decision, specified the exact language to be included in a notice of default, and that language includes the provision (contained in the notice provided by the trustee here) which informs the obligor that "the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums." In light of that explicit statutory blessing, there is simply no basis for Grewe to complain the trustee here could not require such proof as a condition of reinstatement in this case.

*3. Failure to Provide Notice of Sale in Accordance with Civil Code Section 2924f*

Grewe's last contention is that the trustee's sale was flawed because the trustee only gave notice of the sale in the San Clemente News, which did not qualify as an appropriate vehicle for such notification under Civil Code section 2924f, subdivision (b)(2). That statute requires, in pertinent part, that notification of a trustee's sale be published "in a newspaper of general circulation published in the city in which the property or some part thereof is situated, if any part thereof is situated in a city, if not, then in a newspaper of general circulation published in the judicial district in which the

8

property or some part thereof is situated, or in case no newspaper of general circulation is published in the city or judicial district, as the case may be, in a newspaper of general circulation published in the county in which the property or some part thereof is situated . . . ."  (Civ. Code § 2924f, subd. (b)(2).)

The trial court rejected this contention, finding it was neither pleaded in the complaint nor adequately proven at trial.  As to the latter point, the trial court expressly refused Grewe's mid-trial request that it take judicial notice of an Internet page purporting to list all the newspapers of general circulation.

Grewe asserts, in the most conclusory fashion, that the publication issue was adequately raised in his complaint, citing paragraph 49, which (although he does not quote it) states "[a]s shown above, the Trustee's Sale was not conducted in accordance with the mandatory statutory requirements and is thus void."  Of course, absent some demonstration that the publication issue was "shown above," this paragraph cannot be described as raising that issue.  Grewe makes no such showing.

Neither does Grewe provide any authority to support his conclusory assertion that he "raised [the] issue[] in [o]pening [s]tatements and throughout trial."  We consequently ignore that assertion.  "[A]n appellant must not only present an analysis of the facts and legal authority on each point made, but must also support arguments with appropriate citations to the material facts in the record.  If he fails to do so, the argument is forfeited."  (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

As to the inadequacy of his proof, Grewe makes no effort to establish the court erred in denying his request for judicial notice other than to claim, without citation to the record, that the list he asked the court to take judicial notice of was "maintained [i]n the Court's records."  That bare claim, which is also unsupported by any pertinent authority, is insufficient to establish the court erred.  (*Nielsen v. Gibson, supra*, 178 Cal.App.4th at pp. 324-325.)

9

DISPOSITION

The appeal by Two Doheny, LLC is dismissed.  The judgment is affirmed. Respondents are to recover their costs on appeal.

                                        RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


ARONSON, J.

10