Filed 5/2/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHARLES TANIGUCHI et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>RESTORATION HOMES, LLC,<br><br>     Defendant and Respondent. | A152827<br><br>(San Mateo County<br>Super. Ct. No. CIV525919)<br>ORDER MODIFYING OPINION |

BY THE COURT:

It is ordered that the opinion filed herein on April 30, 2019, be modified as follows:

On page 6, in the first paragraph, in the fifth sentence, the word "modified" is added before the final word, which is "loan."

On page 6, in the first paragraph, the sixth sentence is deleted.

This modification does not change the judgment.


Dated: _____          _____

                                                    Kline, P.J.

Filed 4/30/19; reposted with page numbers (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHARLES TANIGUCHI et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> RESTORATION HOMES, LLC, <br><br>     Defendant and Respondent. | A152827 <br><br> (San Mateo County <br> Super. Ct. No. CIV525919) |

If all or part of the principal secured by a mortgage or deed of trust becomes due as the result of the borrower's default in paying interest or installments of principal, Civil Code section 2924c[1] allows the borrower to pay the amount in default, plus specified fees and expenses, and thereby cure the default, reinstate the mortgage loan, and avoid foreclosure. The borrowers in this appeal missed four monthly payments on a mortgage loan that had been modified after an earlier default. The modification deferred certain amounts due on the original loan, including principal, and provided that any default would allow the lender to void the modification and enforce the original loan terms. The question before us is this: to cure the default and reinstate the loan under section 2924c, must the borrowers pay the amount of the earlier default on the original loan, which had been deferred under the modification to the end of the loan term, as well as paying the missed modified monthly payments that caused the default on the modified loan?

The trial court answered that question "yes," and on that basis granted the lender's motion for summary adjudication on the borrowers' claim that the lender violated section 2924c. This was error, and we reverse.

---

[1] Statutory references are to the Civil Code unless otherwise stated.

1

# FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Charles and Marie Louise Taniguchi (the Taniguchis) obtained a home loan of $510,500, secured by a deed of trust. In 2009, they agreed to a loan modification that adjusted the principal amount, reduced the interest rate and monthly payments, and deferred until the maturity of the loan approximately $116,000 of indebtedness, including accrued and unpaid interest and principal, fees, and foreclosure expenses. The modification provided that failure to make modified payments as scheduled would be an event of default, and that in the event of a default the modification would be null and void at the lender's option, and the lender would have the right to enforce the loan and associated agreements according to the original terms. The modification left unchanged certain provisions of the original loan documents, including acceleration clauses authorizing the lender to require a defaulting borrower to immediately pay the full amount of principal not yet paid and all interest owed on that amount, and to invoke the power of sale.

The Taniguchis defaulted on the modified loan, which was eventually assigned to Restoration Homes, LLC (Restoration Homes). Restoration Homes caused a notice of default to be recorded in 2013. The Taniguchis were informed that to reinstate their loan and avoid foreclosure, they would be required to pay their four missed monthly payments and the associated late charges specified in the modified loan (totaling about $11,000) and $4,500 in foreclosure fees and costs, plus all the sums that had previously been deferred under the loan modification. By then, the deferred amount was over $120,000 in principal, interest and charges (deferred amounts).

The Taniguchis took exception to the amount Restoration Homes required for reinstatement of the loan and filed suit in superior court. Shortly after that, Restoration Homes caused a notice of trustee's sale to be recorded, which led the Taniguchis to file a second suit and seek a temporary restraining order to prevent the foreclosure sale. The temporary restraining order was granted; the two lawsuits were consolidated; and the consolidated matter was stayed for approximately a year as a result of Charles Taniguchi

2

filing for bankruptcy.  Eventually, the Taniguchis filed a third lawsuit, and all three superior court cases were consolidated.

As relevant here, the Taniguchis alleged four causes of action against Restoration Homes:  violation of section 2924c by demanding excessive amounts to reinstate the loan, unfair competition, breach of contract, and breach of the covenant of good faith and fair dealing.  The unfair competition cause of action alleged that Restoration Homes' violation of section 2924c constitutes a violation Business and Professions Code section 17200 et seq. (the UCL).  Restoration Homes sought summary judgment, or in the alternative summary adjudication.  Taniguchis filed a cross motion for summary adjudication on the causes of action for violation of section 2924c and the UCL.

The trial court denied the Taniguchis' motion, granted Restoration Homes' motions, and entered judgment for Restoration Homes.  On appeal, the Taniguchis challenge the judgment only insofar as it rests on the trial court's grant of summary adjudication to Restoration Homes on the Taniguchis' causes of action for violation of section 2924c and the UCL.

## DISCUSSION

We review a grant of summary adjudication de novo to determine "whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law."  (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; § 437c, subd. (c).)  There is no dispute as to the relevant facts we summarized above, and we exercise our independent judgment as to their legal effect.

*Applicable Law*

Like the Taniguchis' loan documents, "[t]he typical form promissory note and deed of trust provide that upon any default in the trustor's obligations, the beneficiary may elect to accelerate the payment of all sums of principal and interest and commence foreclosure proceedings."  (5 Miller & Starr, Cal. Real Estate (4th ed. 2018) § 13:230, p. 13-938.)  The statutory right of reinstatement, set forth in section 2924c, "effectively modifies the contract provision which permits acceleration upon default."  (*Ibid.*)

3

Section 2924c, subdivision (a)(1) provides that when a mortgage loan is accelerated as a result of a borrower's default, the borrower can reinstate the loan by paying all amounts due, "other than the portion of principal as would not then be due had no default occurred."[2] That is, the borrower can cure the default and reinstate his or her loan by paying the amount of the default, including fees and costs resulting from the default, rather than the entire accelerated balance.[3] The mortgage lender must inform the borrower of the correct amount due to reinstate the loan. (*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 217.)

California courts have long recognized the public policy behind the right to reinstatement, as evidenced by this excerpt from a Court of Appeal opinion from 1949: "Section 2924c of the Civil Code was first enacted in 1933, during a time of financial stress and depression throughout the United States. The purpose of the legislation was to save equities in homes, in many instances built up through years of monthly payments. . . . [¶] While conditions are fortunately different than they were in 1933, the

---

[2] "Whenever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property . . . has, prior to the maturity date fixed in that obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal . . . the trustor or mortgagor . . . may pay to the beneficiary or the mortgagee . . . the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses, subject to subdivision (c), that are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees, subject to subdivision (d), other than the portion of principal as would not then be due had no default occurred, and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if the acceleration had not occurred." (§ 2924c, subd. (a)(1).)

[3] Once a notice of default is recorded, the borrower can reinstate the loan until five business days before the date of sale set forth in the notice of sale. (§ 2924c, subd. (e).)

4

protection given by the section to borrowers is just as important now as it was then. The right to make up payments in default and thus avoid calling the entire loan and sale under a trust deed is good public policy at any time." (*Magnus v. Morrison* (1949) 93 Cal.App.2d 1, 3.)

The right to reinstate a loan under section 2924c cannot be waived: "Any express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privilege conferred upon him by Sections 2924, 2924b, 2924c of the Civil Code . . . shall be void and of no effect." (§ 2953; see *Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308, 324 [renewals of loans, to which section 2953 applies, include amendments and modifications of notes or deeds of trust; in contrast, a forbearance agreement that by its terms did not modify a note or deed of trust was not a renewal to which section 2953 would apply].)

*Analysis*

The Taniguchis contend that under section 2924c, Restoration Homes could not lawfully condition reinstatement of their loan on the payment of amounts that were deferred in the loan modification. They argue that requiring them to pay the deferred amounts, instead of just the missed modified payments plus costs, essentially requires them to waive their right of reinstatement with respect to the modified loan, in contravention of section 2953.

Restoration Homes takes the position that the loan modification gave it the option to enforce the original loan terms if the Taniguchis defaulted on the modified loan, and since under the original loan—pre-modification—the deferred amounts were due and owing, they could properly be required as a condition of reinstatement under section 2924c.

5

This appears to be a case of first impression.[4] We conclude that the Taniguchis have the better argument. When principal comes due as the result of a default, section 2924c allows a borrower to cure that precipitating default and reinstate his or her loan by paying the amount of the default, plus fees and expenses. Here, the default is the failure to make payments on the modified loan. Accordingly, section 2924c gives the Taniguchis the opportunity to cure their precipitating default (that is, the missed modified payments) by making up those missed payments and paying the associated late charges and fees, and in that way to avoid the consequences of the default on the defaulted loan. Those consequences, of course, would include the demand for immediate payment of the deferred amounts. Restoration Homes' position would have the effect of depriving the Taniguchis of any opportunity to cure the precipitating default and reinstate the modified loan. Restoration Homes points to nothing in the loan modification documents to suggest that the Taniguchis had forfeited such an opportunity, nor to anything in section 2924c to suggest that such a forfeiture would be enforceable even if it were reflected in the loan documents.

To counter the Taniguchis' argument that they have been effectively denied a right to reinstate their loan, Restoration Homes contends that the deferred amounts have been due and owing since the Taniguchis' original default, which preceded the loan modification. In that way, the deferred amounts (like the four missed modified payments) are simply part of what must be paid to reinstate the loan, rather than an impermissible acceleration of amounts then not due. This argument is not persuasive. If the deferred amounts had actually been due and owing even after the loan was modified,

---

[4] In their briefs, the parties debate the extent to which *In re Lammy* (Bankr. E.D.Pa. 2006) 356 B.R. 168 is persuasive authority here. *In re Lammy* arose under 11 United States Code section 1322, subdivision (b)(5), which allows the bankruptcy plan for a Chapter 13 debtor to provide for the cure of a prepetition payment default. (356 B.R. at p. 172.) The court ruled that under Pennsylvania law and the parties' agreements, the debtor could cure a modified loan by paying the arrearage that accumulated under the modification, rather than by paying that arrearage as well as the arrearage that had accumulated under the original loan terms before modification. (*Id.* at pp. 169, 177.)

6

then the Taniguchis would have been in default throughout the term of the modified loan even if they timely made every required monthly payment. This is inconsistent with the modified loan agreement dated September 25, 2009, which states, "Lender will bring the loan due for the October 01, 2009 payment." (See *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1001 [in appropriate circumstances, a statement that an agreement " 'will bring your loan current' " can reasonably be interpreted to mean that the agreement cures a past default].) Further, the modified loan agreement is explicit that the deferred amounts are deferred "to the maturity date of the loan or the date the loan is paid in full, which ever comes first."[5] Had the Taniguchis made all of their monthly payments, Restoration Homes could not have claimed the deferred amounts until the end of the loan, further proof that the deferred amounts were not currently due and owing.

In sum, on the undisputed facts, Restoration Homes failed to demonstrate that the Taniguchis could not prevail on their claim that Restoration Homes violated section 2924c, and the trial court erred in granting summary adjudication to Restoration Homes on this cause of action. We need not reach the Taniguchis' other arguments on this cause of action as to the existence of triable issues of fact.[6]

We turn briefly to the Taniguchis' UCL cause of action, which rests on their claim that Restoration Homes violated section 2924c. The UCL is broad in scope. "[I]t defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' ([Bus. & Prof. Code,] § 17200.) . . . By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180,

---

[5] The modified loan defines the "maturity date" as September 1, 2019.

[6] The Taniguchis also contend that an unpublished order in Charles Taniguchi's Chapter 13 bankruptcy proceeding is either persuasive authority or res judicata on the application of section 2924c. These arguments are not supported by meaningful analysis or citation to authority, and therefore we treat them as forfeited. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

7

fn. omitted.)  Restoration Homes argues that undisputed facts demonstrate that it did not violate section 2924c, but simply exercised its contractual rights under the loan modification, which as a matter of law cannot constitute an unfair business practice under the UCL.  As we have discussed, however, Restoration Homes failed to show that its conduct was consistent with section 2924c and its rights under the loan modification; accordingly, Restoration Homes did not justify the dismissal of the UCL cause of action. Accordingly, just as it was error to grant summary adjudication on the statutory cause of action, it was error to grant summary adjudication on the UCL cause of action.

## DISPOSITION

The judgment is vacated.  The trial court order granting Restoration Homes' motion for summary adjudication on the Taniguchis' causes of action for violation of Civil Code section 2924c and Business and Professions Code section 17200 et seq. is vacated, and the matter is remanded for further proceedings consistent with this opinion. The Taniguchis shall recover their costs on appeal.

 

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.


A152827, *Taniguchi v. Restoration Homes LLC*

Trial Court:  Superior Court of San Mateo County

Trial Judge:  Hon. Richard Dubois

Mellen Law Firm, Matthew Mellen, for Plaintiffs and Appellants

Law Offices of Glenn H. Wechsler, Glenn, H. Wechsler, for Defendant and Respondent

A152827, *Taniguchi v. Restoration Homes, LLC*