[Civ. No. 22410. First Dist., Div. Two. Mar. 21, 1966.]

HELEN P. TOMCZAK et al., Plaintiffs and Respondents, v. ANTHONY ORTEGA et al., Defendants and Appellants.

Paul G. Dobbins for Defendants and Appellants.

Howard B. Crittenden, Jr., for Plaintiffs and Respondents.

AGEE, J.—In this unlawful detainer action defendants appeal from the judgment decreeing that plaintiffs are entitled to possession of the property occupied by the Bernard Hotel, 344 Jones Street, San Francisco.

Respondents' claim of ownership and right to possession is based upon a trustee's deed executed following the foreclosure of a first deed of trust on said property, pursuant to proceed-

ings under Civil Code section 2924. The foreclosure sale was held on October 14, 1963 and the trustee's deed was executed on the following day. The within action was filed on October 22, 1963.

The deed of trust was recorded on May 20, 1960; the note for which it is security is in the principal sum of $138,000; interest and principal are payable at the rate of $1,300 on the 18th day of each month; both instruments contain an acceleration of maturity clause.

The notice of default, upon which the trustee's sale of October 14, 1963 is based, was recorded on March 27, 1961.[1] It declares the entire obligation to be due because of the following specified defaults:

"WHEREAS, a breach of the obligation for which such transfer in trust is security has occured [*sic*] in that default has been made in the payment of principal and interest on said promissory note, to wit: $450 of the principal falling due on August 18, 1960; $506.91 of the principal falling due on November 18, 1960; and the entire principal and interest of $1300 falling due on December 18, 1960, January 18, 1961, February 18, 1961 and March 18, 1961, and each of said dates; and default has been made in the payment of City & County Taxes, first installment of 1960-1 and said installment of taxes with penalties have been in default since December 1960 and are still unpaid and still in default."

Appellants contend that the foreclosure sale and the trustee's deed are invalid because the default under which the deed of trust was foreclosed *had been cured* by respondents' compliance with Civil Code section 2924c.

This section provides in pertinent part that whenever the entire obligation secured by a deed of trust on real property has, prior to its maturity date, been declared due by reason of default in payment of interest or of any installment of principal, or by reason of the failure of the trustor to pay taxes agreed to be paid thereunder, the trustor or his successor in interest, at any time within *three months* of the recording of the notice of default under such deed of trust, *may pay* to the beneficiary the *entire amount then due* under the terms of such deed of trust (including certain costs and fees) *other than* such portion of principal as would not then

---

[1]An earlier notice of default was recorded on November 25, 1960, reciting that $500 of the September 18 payment and all of the October 18, 1960 payment were unpaid. However, no sale was ever held under this notice. The above two items were paid thereafter and were not included in the March 27, 1961 notice of default.

be due had no default occurred, and thereby *cure the default* theretofore existing, and the deed of trust shall be reinstated and shall be and remain in force and effect, the same as if no such acceleration had occurred.

On March 17, 1961, appellants' predecessors in interest had filed an action against respondents to enjoin the holding of a trustee's sale under the notice of default recorded on November 25, 1960 (see fn. 1, *supra*). One of the contentions made in that action was that the notice provisions of Civil Code section 2924b had not been complied with. While never ruled upon, the contention appears to be good. (In any event, respondents decided not to proceed under this notice of default.)

A hearing on the application for a preliminary injunction was noticed for March 24, 1961. On that date respondents presented to the court an itemized statement. Under the caption, ''To re-establish the Deed of Trust under CC 2924c,'' there were listed the following items: balance on August 1960 installment $450; balance on November 1960 installment $506.91; four payments of $1,300 each on December, January, February and March installments; property taxes and penalty on December 1960 installment, *estimated* at $1,500.

These items, which total $7,656.91, are the *only* items included in the notice of default, recorded on March 27, 1961. (The March 24 statement also included attorney fees and costs but the court stated that these could be determined at the time of trial.)

It should be noted at this point that respondents are bound by their notice of default. They cannot insist upon any grounds of default other than those stated in that notice. In other words, upon payment of the items listed therein, that *particular default* was cured and ''the deed of trust . . . shall be reinstated.'' (Civ. Code, § 2924c; *Hayward Lbr. & Invest. Co.* v. *Corbett,* 138 Cal.App. 644, 650 [33 P.2d 41]; *Bisno* v. *Sax,* 175 Cal.App.2d 714, 720 [346 P.2d 814].)

The court hearing was continued to April 3, 1961, at which time a payment of $7,680 was made to respondents. This amount was intended to cover the delinquencies specified in said notice of default.

During the trial of the instant action, respondent Z. Tomczak was asked who had determined the figure of $7,680. He testified as follows: ''Mr. Crittenden [respondents' attorney] determined the payment, but it was never determined to be

the correct amount. Judge O'Day at the time requested an amount in round figures, and that is what we arrived at. . . . From whatever records I had, yes.''

The parties did not at that time know the exact amount of the tax penalty and that explains why the ''round'' figure of $7,680 was given to the court.

After said payment of $7,680 was made, the court ordered the issuance of a preliminary injunction restraining respondents from proceeding with the trustee's sale then scheduled for April 8, 1961.

By letter of April 4, 1961, respondents' attorney acknowledged the payment on April 3 of the $7,680. He stated therein that ''The tax collector gave us a statement showing that the County taxes for the first installment of the current year of 1960-1 with penalties was $1,579.78.''

Had respondents' attorney had this information available at the time of the court hearing, the exact amount necessary to clear up the items specified in the notice of default could have been provided. As it was, the amount stated to the court turned out to be short by $56.69. However, the conduct of the parties thereafter demonstrates that everyone concerned considered the payment made in court to be in full satisfaction of the items listed in said notice of default.

Respondents' books were kept on a running balance basis and payments were applied first to interest and then to principal. Thus, while the $56.69 amount referred to above does not appear as an isolated figure in said books, it is included in the unpaid balance of principal and thus no loss was occasioned to respondents by said miscalculation.

On May 4, 1961, a payment of $2,890 was made. Respondents' attorney acknowledged this by letter of the same date. In it he states, ''you designate part is for the second installment of County Taxes [due April 10, 1961] with penalties, and the balance is the *current payment*.'' (Italics added.) Respondents made no protest or objection to such designation.

The amount of taxes ''with penalties'' was the same amount as was required to satisfy the first installment. The parties were aware of this from the prior experience. Thus the payment of $2,890 was intended to approximate the April 18 payment of $1,300 plus the delinquent tax payment of $1,579.58.

Appellants had at this point, which was well within the three-month period allowed by section 2924c, paid the entire

amount which all parties concerned believed was sufficient to fully satisfy the items contained in the notice of default, as well as all payments which had fallen due since then.

The mutual belief of the parties that only the regular monthly payments of $1,300 were due following the above payments of $7,680 and $2,890 is further demonstrated by the letter of respondents' attorney, dated May 26, 1961, acknowledging receipt of another payment of $1,300. The concluding sentence of this letter is as follows: ''With this payment, interest is paid to 26 May and the principal is now reduced to $131,269.67.''

On July 10, 1961 respondents' attorney acknowledged receipt of a check for $1,300, dated July 7, 1961, and stated: ''Interest is paid to and including 10 July 1961. *Under the terms of the note, there will be $1300 due on 18 July 1961.*'' (Italics ours.)

On August 9, 1961, respondents' attorney wrote to his clients, enclosing a cashier's check for $1,300 and stating: ''This arrived in this morning's mail from Brenner, stating it represents the *July payment* on the loan at 344 Jones Street.'' (Italics ours.) Again, the recital as to which installment was being paid was not protested or objected to by respondents.

We realize that the three-month period allowed by section 2924c to ''cure the default'' ended on June 27, 1961. Our only purpose in calling attention to the letters of July 10 and August 9 is to corroborate the fact that respondents had accepted the payments of $7,680 and $2,890 during such redemption period as being sufficient to ''cure the default'' within the meaning of section 2924c of the Civil Code.

It would be unconscionable to hold, under the circumstances presented here, that respondents' miscalculation of $56.69, not one cent of which was lost to them, would force a forfeiture of appellants' equity in the subject property.

We are of the opinion that the payments made to respondents during the three months following the recordation of the notice of default on March 27, 1961, cured that particular default and that the trustee's sale held thereafter, *which is based upon such default,* is invalid as between appellants and respondents.

We are not dealing here with a purchaser who has no knowledge of the facts relevant to such invalidity. Respondent Z. Tomczak acted as the trustee under the deed of trust;

respondent Helen Tomczak, his mother, is the beneficiary thereunder and also the purchaser at said trustee's sale; since the commencement of this action, respondent Helen has deeded her interest in the trust property to respondent Z. Thus, these two respondents or their attorney have at all times involved herein been in possession of all of the pertinent facts.

Our decision herein does not in any way affect the validity of the deed of trust or the primary obligation which it secures. Nor does it affect the right of respondents to declare a default for causes other than those specified in the within notice of default.

 Respondents make the contention that appellants are precluded from relying upon section 2924c by the provision in the deed of trust that the factual recitals in a trustee's deed executed following a foreclosure sale "shall be conclusive proof of the truthfulness thereof."

The trustee's deed here refers to the recordation of the notice of default and then recites that "Such default *still existed* at the time of sale." (Italics added.) There is no substantial evidence to support this recital and it cannot be upheld in this instance.

To accept this recital as being binding upon appellants would, under the circumstances herein, be contrary to the public policy purpose behind Civil Code section 2953, which provides in pertinent part as follows: "Any express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of trust, . . . whereby the borrower agrees to waive the rights, or privileges conferred upon him by Sections 2924, 2924b, [or] 2924c of the Civil Code . . . shall be void and of no effect."

It is unnecessary to pass upon the other points raised by appellants. The judgment is reversed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied April 20, 1966, and respondents' petition for a hearing by the Supreme Court was denied May 18, 1966.