**In re Andy ATIGHI, Debtor.**

**Andy Atighi, Plaintiff,**

**v.**

**Robert Green, et al., Defendants.**

**Bankruptcy No. LA 99–18593SB.**
**Adversary No. 99–02340SB.**

United States Bankruptcy Court,
C.D. California.

Nov. 5, 2004.

David Burkenroad, Santa Monica, CA, for Debtor.

Brian A. Pierik, Joseph P. Buchman, Gary W. Park, Burke, Williams & Sorensen, LLP, Los Angeles, CA, for Defendants.

AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE NOTICE OF DEFAULT

SAMUEL L. BUFFORD, Bankruptcy Judge.

## I. INTRODUCTION

The court heard plaintiff's motion to reconsider its findings of fact and conclu-sions of law on October 19, 2004. After considering the moving and opposition papers, oral argument of the parties, and the pleadings and files in this adversary proceeding and the related bankruptcy case, and good cause appearing therefor, the court makes the following amended findings of fact and conclusions of law.

## II. RELEVANT FACTS

Plaintiff Andy Atighi owned real estate in Ventura County that was subject to a second deed of trust held by defendants Robert Green, Elizabeth Green and Green Family Trust (the Greens) on which the Greens eventually foreclosed. Atighi brought this adversary proceeding to challenge the propriety of the foreclosure on the grounds that the notice of default inaccurately stated, in a substantial sum, the amount of arrearages then owing.

After discovery and cross motions for summary judgment, the court ruled on a number of issues that are no longer before the court. The court found one triable issue of fact, on which it conducted a trial on October 10, 2001, after which it ruled for the Greens on the merits of the foreclosure.

On appeal, the district court affirmed in all respects except one. The district court remanded for trial on the issue of the accuracy of the amount stated in the notice of default recorded by the Greens, including all of Atighi's objections to the correctness of that amount, in order for both parties' witnesses to be cross-examined and for the court to make credibility determinations.

It is undisputed that arrearage stated in the notice of default included $153,858.35 in unpaid principal and interest and $27,650.48 in attorneys fees.

## III. ANALYSIS

■ California has a comprehensive statutory scheme for conducting real estate foreclosures without court approval. *See generally Royal Thrift & Loan Co. v. County Escrow, Inc.,* 123 Cal.App.4th 24, 32, 20 Cal.Rptr.3d 37 (2004). This procedure provides a quick and easy way to conduct a foreclosure sale in approximately four months. The legislature intended that a properly conducted sale under this procedure constitute a final adjudication of the rights of the borrower and the lender. *See id.*

■ The procedure begins with a debtor's executing and delivering a "deed of trust," instead of a mortgage, as security for the debt at issue. California case law describes the foreclosure process as follows:

> Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. The trustee may postpone the sale at any time before the sale is completed. If the sale is postponed, the requisite notices must be given. The conduct of the sale, including any postponements, is governed by Civil Code section 2924g. The property must be sold at public auction to the highest bidder.

As a general rule, there is a common law rebuttable presumption that a fore-closure sale has been conducted regularly and fairly.

*See id.* (citations omitted).

Atighi contends that the amount of the arrearage stated in the notice of default was erroneous in two respects. First, he contends that some of his payments to defendants were not properly recorded, and that in consequence the notice of default included payments he had already made. Second, Atighi contends that the Greens are not entitled to include $27,650.48 in attorneys fees in the notice of default.

### A. PRINCIPAL AND INTEREST

■ As to the principal and interest, the court finds that the evidence presented by the defendants is extremely persuasive. The court finds that the records kept by Great Western Bank and Washington Mutual Bank, which collected the payments and kept the records on behalf of defendants Elizabeth Green, Robert Green and the Green Family Trust (the Greens), are extremely well organized, detailed and accurate. This is particularly commendable given that Atighi's payments were chronically late and frequently extremely late. The court finds the Greens' evidence on this subject altogether credible, and disbelieves all evidence presented by Atighi inconsistent with the Greens' evidence.

There are at least two legitimate ways to account for the payments made by Atighi in this case. One method, apparently contemplated by the promissory note itself, is to accrue interest until the date of each payment, and to apply each payment first to accrued interest and then to principal. The second method, utilized consistently by both the plaintiff and the defendants, is to ignore any interest accruing after the date that a payment came due, and to treat all payments received as if they were timely made. The amount un-

paid stated in the notice of default was based on the second alternative, which was consistently applied by the parties on both sides of this case. This alternative resulted in a balance outstanding of nearly $7,000 less than the method contemplated by the note.

According to the Greens' calculations, the exact amount owing in principal and interest at the time of the recording of the notice of default was $153,858.35. The amount included in the arrearages stated in the notice of default was $153,858.33, a difference of two cents. The court finds that this difference of two cents is immaterial, and that the notice of default included the correct amount of principal and interest. *See, e.g., Tomczak v. Ortega*, 240 Cal.App.2d 902, 50 Cal.Rptr. 20 (1966) (discrepancy of $56.99 in calculation not treated as material); 3 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, *Security Transactions in Real Property* § 131 (9th ed.1987) (substantial compliance with the statute is sufficient; minor inaccuracies do not render notice fatally defective).

## B. ATTORNEYS FEES

■ The notice of default included $27,650.48 in attorneys fees. A party claiming attorneys fees has the burden of showing that the amount claimed is proper. This burden is particularly important where "the courts demand strict compliance with [the] requirement" with respect to the amount owing as stated in the notice of default. *See* WITKIN, *supra*, at *id.; see also Sweatt v. Foreclosure Co.*, 166 Cal. App.3d 273, 212 Cal.Rptr. 350, 352 (1985) ("The notice of default will be strictly construed and must correctly set forth the amounts required to cure the default.") (dictum).

■ All of the attorneys fees included in the notice of default were incurred in Atighi's prior bankruptcy case. The substantive issues in the bankruptcy case were governed by federal law and thus federal law, not state law, governs the award of attorneys fees. *See Hassen Imports P'ship v. KWP Financial VI (In re Hassen Imports P'ship)*, 256 B.R. 916, 921 (9th Cir. BAP 2000).

■ Under Bankruptcy Code § 506(b), a creditor is entitled to attorneys fees in a bankruptcy case if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement. *See, e.g., Kamai v. Long Beach Mortgage Co. (In re Kamai)*, 316 B.R. 544, 548 (9th Cir. BAP 2004); *Kord Enterprises II v. California Commerce Bank (In re Kord Enterprises II)*, 139 F.3d 684, 687 (9th Cir.1998); *Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)*, 151 B.R. 931, 935 (9th Cir. BAP 1993); *Meritor Mortgage Corp., West v. Salazar (In re Salazar)*, 82 B.R. 538, 540 (9th Cir. BAP 1987).

■ Atighi does not dispute that the Greens were oversecured creditors with an allowed secured claim. In addition, Atighi does not challenge the reasonableness of the fees. Thus the attorneys fees included in the notice of default may be chargeable to Atighi under Bankruptcy Code § 506(b) to the extent that they are "provided for under the agreement under which such claim arose."

Both the promissory note and the deed of trust here at issue contain attorneys fees provisions. The promissory note authorizes a claim for attorneys fees only in "such sum as the Court may adjudge as attorneys fees." No court has issued an award for attorneys fees in the dispute between Atighi and the Greens before the notice of default was recorded (or afterwards). In consequence, the attorneys fee clause in the note did not authorize the

inclusion of any attorneys fees in the notice of default.

Paragraph A(3) of the deed of trust also authorizes the inclusion of attorneys fees in the notice of default. It requires Atighi to pay "attorneys fees in a reasonable sum, in any such action or proceeding in which beneficiary or Trustee may appear." The provision sets out three conditions. First, the attorneys fees must be reasonable. This condition is not at issue because Atighi does not challenge the reasonableness of the fees.

Second, the provision authorizes attorneys fees only insofar as counsel for the Greens appears in an "action or proceeding." Absent an action or proceeding, it is impossible for Greens' counsel to "appear," within the meaning of this provision. Atighi's prior bankruptcy case qualifies as an "action or proceeding." Thus this requirement is met.

Third, counsel for the Greens must appear in the action or proceeding. The Greens' act of filing a proof of claim (and amending it), and opposing Atighi's proposed chapter 11 in the prior bankruptcy case constitutes appearing. Thus all three conditions have been met for the authorization of attorneys fees under the deed of trust provision, and their inclusion in the notice of default.

## IV. CONCLUSION

The court concludes that the amount of attorneys fees included in the notice of default was justified under the attorneys fees provision in the deed of trust. Therefore, the total amount stated in the notice of default was correct. Thus the notice of default was accurate and the foreclosure sale was proper.

The court has also found previously that Atighi has waived the claim that the amount of attorneys fees was improper by his failure to assert and prosecute this assertion in a timely fashion. The court incorporates by reference its findings entered on August 31, 2004 on the issue of waiver.

In consequence, the court finds that the Greens are entitled to judgment after trial in this adversary proceeding.