Filed 10/2/20  Forde v. Entous CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEPHEN FORDE, | B292606 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BSC570050) |
| v. | |
| ALLAN ENTOUS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael P. Vicencia, Judge.  Reversed and remanded with directions.

Henry J. Josefsberg for Plaintiff and Appellant.

Berokim & Duel and Kousha Berokim for Defendants and Respondents.

_____

Stephen Forde appeals from a judgment against him on his claims against Allan Entous and related entities arising from Entous's alleged wrongful foreclosure on three properties that Forde owned.[1]  Forde alleged that the loans the three properties secured were usurious and he therefore was not obligated to pay any interest on them.  He claimed that Entous's nonjudicial foreclosure on the properties was wrongful because, without any requirement to pay interest, Forde was current on his loans.

During a trial to the court on Forde's equitable claims, the court granted a defense motion for judgment on the ground that, even assuming the loans were usurious, Forde had no wrongful foreclosure claim because he failed to tender the amount due on the secured loans.  The parties then reached a settlement and Forde dismissed his remaining claims for damages to facilitate this appeal.

Although the procedural history of the case is complicated and the parties argue a number of issues on appeal, the dispositive issue is straightforward.  The trial court mistakenly concluded that Forde was required to tender the *entire* amount of the outstanding principal on the allegedly usurious loans to maintain a claim for wrongful foreclosure.  That conclusion is inconsistent with the law on usury and wrongful foreclosure.

The evidence suggests that, at least for two of the loans, Forde was not in default on the payment of principal at the time

---

[1] As identified in the judgment, the prevailing parties were Allan Entous, Allan Entous as trustee of the Entous Revocable Trust Dated June 8, 1984, and The Allan Entous 401(k) P/S Plan. We refer to them collectively as Entous.

that Entous began foreclosure proceedings.  Thus, the trial court's error was prejudicial.

Forde originally asserted 10 causes of action.  The trial court decided five of those causes of action, including wrongful foreclosure.  Forde voluntarily dismissed the rest.

Of the five claims that the trial court decided, Forde makes an argument for reversal on only one—wrongful foreclosure.  We therefore will reverse the judgment and remand for trial on Forde's legal claim for damages for wrongful foreclosure.[2]

## BACKGROUND

### 1.    The Loans

Forde received a series of loans from Entous from 2011 to 2014.  Three of those loans were secured by properties that are at issue in this appeal.

Following nonjudicial foreclosure proceedings after Forde's alleged default, Entous purchased each of the properties at a trustee's sale on June 12, 2015.

#### a.    *310 North Jackson Street*

This property (310 Jackson) is a condominium unit in Glendale.  It secured a loan for $204,000 that Forde received from Entous in July 2013.

The loan was documented by a note that specified an interest rate of 10 percent.  The note required monthly interest

---

[2] As discussed further below, pursuant to the settlement Forde dismissed several of his remaining claims (for alleged usury and breach of the covenant of good faith and fair dealing) *without* prejudice with respect to two of the foreclosed properties.  Because those claims were dismissed, we do not consider them.  We leave to the trial court to decide any motion that Forde might make on remand to amend his complaint to revive those claims.

payments "until the 7th day of August, 2015, at which time the entire principal balance, together with interest due thereon, shall become due and payable."

Entous issued a notice of default on the loan on January 16, 2015, seven months before the principal was due, claiming a deficiency of $8,128.67.

### b. *306 North Jackson Street*

This property (306 Jackson) secured a note for $180,000 dated December 26, 2013. The note was "an optional advance note," with a first advance for $114,000. The note stated that "individual advances made pursuant to this note may contain different terms and due dates." The note specified an interest rate of 10 percent "payable monthly at interest only or more." Unless otherwise stated "in any future advance," the due date of the note was December 31, 2014.

Entous issued a notice of default on the loan on January 16, 2015, claiming a deficiency of $136,649.53.

### c. *1129 North Verdugo Road*

This property (1129 Verdugo) secured a note for $240,000 dated March 19, 2014. The note was also an "optional advance note," with an initial advance of $60,000.[3] The note specified 10 percent interest "payable monthly at interest only or more." Unless otherwise indicated in any future advance, the due date of the note was March 31, 2015.

---

[3] Forde explained at trial that this note combined two previous loans, including a loan for $30,000 he originally received on July 25, 2013, and another $30,000 loan that he had received earlier that year.

4

Entous issued a notice of default on the loan on January 16, 2015, more than two months before the principal was due, claiming a deficiency of $2,210.74.

## 2.      Proceedings in the Trial Court

### a.      *Forde's allegations*

Forde's operative second amended complaint (Complaint) alleged causes of action for:  (1) wrongful foreclosure; (2) setting aside the trustee's sales; (3) cancelation of instruments; (4) quiet title; (5) slander of title; (6) negligence;[4] (7) breach of the covenant of good faith and fair dealing; (8) "possession of personal property and damages"; (9) usury; and (10) unlawful, unfair, or fraudulent business practices under Business and Professions Code section 17200 et seq.

Forde alleged that, despite the stated interest rates on the notes for the loans, Entous actually required usurious rates of interest.  Forde claimed that, because no interest may be claimed on a usurious loan, "Forde actually had a credit balance applicable to each loan when the Entous Defendants fabricated the sudden defaults."  Forde sought to set aside the foreclosure sales and also claimed compensatory and punitive damages.

Entous filed a separate action against Forde on February 24, 2017, for unlawful detainer (the UD Action). Entous claimed that Forde wrongfully remained in possession of 310 Jackson following the trustee's sale.

---

[4] The negligence claim was alleged only against a former defendant, RESS Financial Corporation, and was dismissed before trial.

**b.** *The bench trial*

The trial court bifurcated trial into three phases. The first phase was a trial to the court on the equitable claims in Forde's first five causes of action. The second phase was a jury trial on Entous's UD Action. The third phase was to be a jury trial on Forde's claims for damages based upon the allegedly usurious loans.

During the bench trial, Forde testified that, in addition to the stated 10 percent interest rates on the notes secured by the three foreclosed properties, Entous required him to make monthly cash payments. Those payments resulted in an interest rate of more than 10 percent.

After Forde had presented his case, Entous moved for judgment. Entous argued that Forde had failed to show that he had tendered the amounts due on the secured loans. Entous argued that no exception to the tender requirement applied to the loans at issue, and that Forde's failure of proof therefore entitled him to judgment in his favor.

The trial court agreed. The court reasoned that, even assuming that the loans on the secured properties were usurious and that all of Forde's interest payments should therefore have been credited to principal, large amounts of principal remained due on each of the loans. The court found that "there are no equitable reasons why tender should not be required." The court concluded that "since tender has not been made . . . then wrongful foreclosure is not available as to any of those three properties."

**c.** *Settlement and judgment*

After the bench trial, the court conducted a jury trial on Entous's UD Action, at which Entous prevailed.

6

Following that trial, the court informed the parties that the jury trial on Forde's usury claims would proceed on the following Monday. The parties reached a settlement before that trial began.

The settlement agreement provided for a payment by Forde to Entous in return for Entous's reconveyance of 310 Jackson. As part of that agreement, Forde waived "his rights and claims as to 310 Jackson Street . . . and Loan for $204,000, including usury/wrongful foreclosure/claims stated in his second amended complaint."

Forde also agreed that he would dismiss his sixth, eighth and tenth causes of action with prejudice. He further agreed that he would waive, and not pursue, claims in his seventh and ninth causes of action, "except for loans associated with 1129 Verdugo and 306 Jackson."

The settlement agreement stated that "Forde intends to, and shall only appeal, the Court ruling and anticipated judgment on 1st, 2nd, 3rd, 4th and 5th causes of action . . . as to 1129 Verdugo and 306 Jackson. If upon appeal the trial court's ruling/judgment is affirmed, then Forde's remaining claims . . . , including usury claims (9th cause of action) as to 1129 Verdugo and 306 Jackson shall be dismissed with prejudice within 15 days of the trial court's receipt of the remittitur."

The trial court entered judgment in favor of Entous on Forde's first five causes of action. Pursuant to the settlement agreement, Forde then filed a request for dismissal of his remaining causes of action.

Forde requested dismissal of his eighth and tenth causes of action with prejudice. Forde also requested dismissal with prejudice of his seventh cause of action (for breach of the

covenant of good faith and fair dealing) and ninth cause of action (for usury) "as to all loans except those loans associated with 306 North Jackson, and 1129 North Verdugo." For the excepted claims, he requested dismissal without prejudice. The trial court granted the request, thus completely resolving the claims in Forde's Complaint.

Following a motion by Entous for contractual attorney fees, the trial court entered an amended judgment awarding Entous fees in the amount of $157,470.[5]

## DISCUSSION

### 1. Appealability

The parties' settlement during the bifurcated trial raises several questions about the appealability of the resulting Judgment.

#### a. *Finality*

As mentioned, the Judgment itself only disposed of Forde's first five causes of action. Pursuant to the settlement, Forde subsequently dismissed his remaining causes of action, but without prejudice as to several. The possibility of future proceedings on those causes of action raises a question about the finality of the Judgment.

A judgment that "fails to dispose of all the causes of action pending between the parties is generally not appealable." (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1100 (*Kurwa*), citing Code Civ. Proc., § 904.1, subd. (a).) Parties to litigation cannot create an appealable final judgment by temporarily dismissing

---

[5] Forde appealed from both the initial judgment and the amended judgment containing the attorney fee award. We refer to both judgments in the singular as the "Judgment."

8

claims pending appeal with the understanding that they will later be revived for resolution: "When . . . the trial court has resolved some causes of action and the others are voluntarily dismissed, but the parties have agreed to preserve the voluntarily dismissed counts for potential litigation upon conclusion of the appeal from the judgment rendered, the judgment is one that 'fails to complete the disposition of all the causes of action between the parties' [citation] and is therefore not appealable." (*Kurwa,* at p. 1105, quoting *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743.) Thus, "where the parties, by waiver or agreed tolling of the statute of limitations or a similar agreement, have arranged for [dismissed] causes of action to be resurrected upon completion of the appeal, they remain 'legally alive' in substance and effect." (*Kurwa, supra,* 57 Cal.4th at p. 1105, quoting *Hill v. City of Clovis* (1998) 63 Cal.App.4th 434, 445 (*Hill*).)

However, a plaintiff's dismissal of his or her claims without prejudice can create a final, appealable judgment if the dismissal is "unaccompanied by any agreement for future litigation." (*Kurwa, supra,* 57 Cal.4th at p. 1105.) A voluntary dismissal without an agreement to toll or waive applicable statutes of limitation includes " 'the very real risk that an applicable statute of limitations will run before the party is in a position to renew the dismissed cause of action.' " (*Id.* at pp. 1105–1106, quoting *Hill, supra,* 63 Cal.App.4th at p. 445.) It is the assurance of future viability provided by a tolling or waiver agreement that "prevents the judgment disposing of the other causes of action from achieving finality." (*Kurwa,* at p. 1106.)

The parties' settlement agreement here does not contain any provision that applicable statutes of limitation will be waived

or tolled pending the appeal. Thus, under the rule established in *Kurwa,* the judgment is final for purposes of appeal even though several of Forde's causes of action were dismissed without prejudice.[6]

### b. *Mootness*

The settlement also raises the question whether the appeal is moot.[7] Entous apparently has already sold 306 Jackson and 1129 Verdugo to bona fide purchasers. At trial, Forde agreed that equitable relief was therefore not available for those properties. The settlement then resolved all of Forde's claims with respect to 310 Jackson.

The bench trial leading to the Judgment involved only the equitable claims in Forde's first five causes of action. Entous suggests that Forde *sought* equitable relief only in those causes of action. If so, the settlement completely disposed of Forde's wrongful foreclosure cause of action by resolving Forde's only remaining equitable claim concerning 310 Jackson.

In contrast, Forde claims that the trial court's ruling also resolved his legal claims for damages, including a claim for damages on his wrongful foreclosure cause of action. Forde

---

[6] Forde's claim that he did not dismiss his usury cause of action is wrong. As discussed, his request for dismissal included that cause of action, albeit without prejudice with respect to the loans secured by 306 Jackson and 1129 Verdugo. Had he not dismissed his usury claim, the Judgment would not have been final for purposes of appeal.

[7] Because the parties' briefs did not discuss this issue, we issued a letter pursuant to Government Code section 68081 inviting the parties to address it. In his letter brief, Entous argues that the appeal is moot.

10

argues that the trial court's ruling following the bench trial not only resolved the equitable claims in his first five causes of action, but also made factual findings that made a further jury trial unnecessary. (See *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2019) 43 Cal.App.5th 988, 993 [when a case involves both legal and equitable claims, the trial court may first decide the equitable issues, which may result in findings that dispose of the legal claims].)[8]

In support, Forde cites his colloquy with the trial court following the bench trial. Forde requested that the trial court "reserve judgment on the wrongful foreclosure issues until after hearing the usury case." The court responded, "I don't need to because even assuming usury is true, he [(Forde)] hasn't tendered."

In its ruling, the trial court did not explicitly state that it intended to resolve any remaining legal claims. Indeed, some of the court's comments suggest that the court believed only equitable claims were at issue in Forde's wrongful foreclosure

---

[8] Forde confuses the issue by arguing in his opening brief that the trial court's ruling made a jury trial unnecessary on his *usury* claim. The trial court did not make such a finding. As discussed, the trial court's ruling following the bench trial resolved only Forde's first five causes of action, and did not address Forde's ninth cause of action for usury. In fact, the trial court was about to proceed to a jury trial on Forde's usury claim when Forde agreed to the settlement that involved dismissal of that claim.

cause of action.[9]  Thus, it is far from clear that the trial court intended its ruling to resolve any remaining claim for damages for wrongful foreclosure.

Nevertheless, it appears that the *effect* of the trial court's ruling was to dispose of a legal claim for damages for wrongful foreclosure.  Wrongful foreclosure is a tort that may be remedied with damages as well as equitable relief.  (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408 [" '[A] trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wil[l]fully oppressive sale of property under a power of sale contained in a mortgage or deed of trust' "], quoting *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7.)  In his first cause of action for wrongful foreclosure, Forde sought "general and special damages" and punitive damages as well as equitable relief.  Forde's trial brief also explained that he sought "all proximately caused damages" on his wrongful foreclosure claim.

Entous does not cite anything in the record showing that Forde abandoned this legal claim.  Thus, it appears that the trial court's ruling resolved Forde's claim for damages for wrongful foreclosure as well as his equitable claim seeking to recover the properties.

Resolution of Forde's equitable claims through the settlement therefore did not moot this appeal.  Forde's legal claim for damages for wrongful foreclosure remains at issue.

---

[9] For example, in discussing the next phase of trial, the court explained that if Forde were able to prove usury, he "might be able to get damages" from the jury but "[y]ou just don't get wrongful foreclosure.  You are talking about getting the property."

12

Moreover, the trial court awarded Entous attorney fees as the prevailing party. If the trial court's ruling on the merits was erroneous, the basis for the attorney fee award disappears. (See *Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 205–206 [concluding that the appeal was not moot in part because such a ruling would "leave unanswered the propriety of the award of $22,000 in attorney's fees"].)

We therefore proceed to consider the merits of Forde's appeal.

## 2. Forde Was Not Required to Prove that He Tendered the Full Amount of Outstanding Principal on the Allegedly Usurious Loans

The trial court's ruling granting Entous's motion for judgment was based on the premise that Forde was required to tender the entire outstanding principal balance on his loans to maintain an action for wrongful foreclosure. Because this is an issue of law, we review it de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

The trial court's understanding that Forde was required to tender the entire outstanding principal is clear from the court's ruling. The court explained that even if one were to assume that all three loans were usurious and credit all Forde's payments to principal as the usury laws require, "[t]here are still large amounts due on each of the properties." The court calculated that Forde still owed $172,342 on 310 Jackson, "just under" $100,000 on 306 Jackson, and $47,200 on 1129 Verdugo. The court concluded that "[s]ince none of that was tendered, wrongful foreclosure is not available."

The trial court found that Forde was required to tender the full amounts of the outstanding principal even if Forde was not in

13

default on principal payments. That finding is apparent from the argument on Entous's motion for judgment.[10]

After the trial court had announced its tentative ruling, Forde argued that, if the loans were usurious, all of Forde's payments should be credited to principal. The trial court agreed, but stated, "That was the calculation I just gave you. Assuming all the payments Mr. Forde says he made were applied only to principal, those amounts [of principal] were still due, and foreclosure was proper because he didn't tender those amounts." Forde then argued that if his payments were credited to principal, "he would, in fact, have a credit balance on the loan and he would be paid well ahead." The court responded "but take advantage of the usury statutes, that does not forgive your obligation to pay the principal. . . It is your obligation to say that because you were charging me usury amounts, not only do I get to take all of those amounts that I paid in quote, unquote 'interest' and apply it all to principal, but I get to continue to pay over time interest-free. That's not available anywhere." In response to Forde's further argument that the notices of default were defective if he had actually paid more than he was required to pay, the court responded, "Right. That may very well be true. But in order to get wrongful foreclosure, you have to pay. That is your first hurdle, and that didn't happen."

---

[10] It is also apparent from the evidence. As summarized above and discussed further below, the notes required monthly payments of interest only. No principal was yet due on at least two of those notes at the time Entous issued the notices of default.

14

The trial court's ruling was inconsistent with the law on usury.  Civil Code section 1916-2 addresses usurious loans.[11] The last sentence of that section states that "[a]ny agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest and no action at law to recover interest in any sum shall be maintained and the debt cannot be declared due *until the full period of time it was contracted for has elapsed*."  (§ 1916-2, italics added.)[12]

Our Supreme Court long ago interpreted that provision to mean that the due date of a usurious loan may not be accelerated due to a failure to pay interest.  In *Haines v. Commercial Mortg. Co.* (1927) 200 Cal. 609 the court explained that "careful consideration of [section 1916-2] convinces us that the intent is that the maturity date of the obligation cannot be accelerated, if

---

[11] Subsequent undesignated statutory references are to the Civil Code.

[12] This provision actually was a portion of an uncodified voter initiative enacted in 1918.  (See *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 207, fn. 7 (*Wishnev*).)  Following the lead of our Supreme Court, we refer to the provision by using West's designation of the uncodified initiative as section 1916-2 of the Civil Code.  (*Ibid.*)

Although section 1916-2 limits interest rates to 12 percent, a later enacted constitutional amendment (now contained in section 1 of article XV) changed the legal limit to 10 percent, with exceptions for various financial institutions.  (Cal. Const., art. XV, §1; *Wishnev, supra,* 8 Cal.5th at pp. 208–209.)  The constitutional amendment did not affect other provisions in section 1916-2 that were not inconsistent with the amendment. (*Wishnev,* at p. 211.)

the option to declare the whole of the principal debt due is dependent solely upon nonpayment of usurious interest.  In other words, if the note provides for installment payments on the principal as well as the payment of interest and gives the right to the holder to declare the whole debt due for nonpayment of either principal or interest, the forfeiture of the right as to interest could not destroy or affect the remaining right as to principal." (*Id.* at pp. 620, 623–625.)

The court has reaffirmed this principle several times, most recently in *Wishnev.*  (See *Verbeck v. Clymer* (1927) 202 Cal. 557, 562 ["It is now well settled that in a case where the usury is established, the obligation to pay interest is void and the maturity date of the principal cannot be accelerated on account of the nonpayment of interest"]; *Wishnev, supra,* 8 Cal.5th at p. 207.)  In *Wishnev,* the court explained that, under the 1918 initiative, a lender who charges usurious interest "forfeits the right to collect *any* interest.  (§ 1916-2.)  Further, the principal debt is not due until the full term of the loan has expired.  (*Ibid.*) The effect of these provisions is to confer upon the borrower the free use of the lender's money for the duration of the loan period." (*Wishnev, supra,* 8 Cal.5th at p. 207.)  Thus, contrary to the trial court's ruling, the law does permit the recipient of a usurious loan to "pay over time interest free."

The trial court's ruling was also inconsistent with the law governing nonjudicial foreclosures.  There is no general requirement that a trustor who is in default must tender the full outstanding amount of the secured loan to avoid a nonjudicial foreclosure.  A trustor must do so if he or she seeks to *redeem* the property—that is, to reclaim it free and clear of the trust deed. (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 527–528

16

(*Turner*).)  But if the trustor seeks only to *reinstate* the existing loan, he or she need only tender the amounts that are then due. (*Ibid.*; § 2924c, subd. (a)(1).)  Similarly, a plaintiff who seeks relief based on the defendant's alleged wrongful refusal to reinstate a loan need only have tendered the amount then due on the loan.  (*Turner,* at p. 528.)

Of course, if *no* amount is actually due, the trustor is not actually in default, and need not tender anything at all.  " 'The law does not require plaintiff to tender the purchase price to a trustee who has no right to sell the property at all.' "  (*Turner, supra,* 27 Cal.App.5th at p. 530, quoting *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 951.)

Consistent with this principle, a trustor who has a counterclaim or set-off against the beneficiary/lender that exceeds the amount due on the loan need not tender anything at all as a prerequisite to a wrongful foreclosure claim.  (*Turner, supra,* 27 Cal.App.5th at pp. 525–526.)  "In such cases, it is deemed that that tender and the counterclaim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required."  (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 113 (*Lona*).)

That is essentially the theory that Forde asserts.  Forde claims that because the loans securing the foreclosed properties were usurious, all his interest payments must be credited to principal and he therefore "should have had credit balances."

17

Thus, he contends that he had a claim for usury that would completely offset the purported default in his loan payments.[13]

Forde asserted this theory below. As discussed above, he argued to the trial court that he had a credit balance on the loans if his payments were all credited to principal. He also argued that he was not obligated to tender the entire amount of the outstanding principal on the loans because such an obligation would "in effect, accelerate the obligation for the payoff," and would "require him to make a balloon payment that he was not otherwise obligated to make."

Forde raised this issue before trial as well. Forde argued in his trial brief that because no interest was due on the allegedly usurious loans, he "actually had credit balances on the loans." His trial brief cited *Lona* in arguing the legal principle that tender is not required when the person who seeks to set aside a trustee's sale has a counterclaim or set-off against the beneficiary. (See *Lona, supra,* 202 Cal.App.4th at p. 113.) Thus, Entous's assertion that Forde did not raise this argument in the trial court is baseless.

## 3. The Trial Court's Ruling Was Prejudicial

The record shows that the trial court's misunderstanding of the legal rule likely affected the outcome. (Code Civ. Proc., § 475.) At least with respect to two of the three loans, there is evidence in the record to support Forde's claim that the loans were current if he owed no interest.

---

[13] Indeed, if the notes in fact required payment of interest only, a finding that the loans were usurious would mean that Forde owed nothing at all on the loans until the principal was due.

Forde testified that all three loans were "interest only." The loan agreements for each of the loans supports the conclusion that only interest was due until the principal was to be paid in full. The agreement for 310 Jackson stated that "[i]nterest is payable in monthly instalments of Seventeen Hundred dollars ($1,700) or more on the 7th day of each month, beginning on the 7th day of September, 2013, and continuing until the 7th day of August, 2015, at which time the entire principal balance, together with interest due thereon, shall become due and payable." The agreement for 306 Jackson stated that "[t]he interest is payable monthly at interest only or more." The "due date" of the note was December 31, 2014, "[u]nless otherwise indicated in any future advance." The agreement for 1129 Verdugo similarly stated that "[t]he interest is payable monthly at interest only or more." The due date of that note was March 31, 2015, "[u]nless otherwise indicated in any future advance."

Each of the notices of default on these three loans was dated January 16, 2015.[14] Thus, as of the date Entous began the process of nonjudicial foreclosure, no principal was yet due on the loans secured by 310 Jackson and 1129 Verdugo. (See *Anderson v. Heart Fed. Sav.* (1989) 208 Cal.App.3d 202, 211 [a beneficiary of a deed of trust is " 'bound by [its] notice of default, . . . [and] cannot insist upon any grounds of default other than those stated in that notice' "], quoting *Tomczak v. Ortega* (1966) 240 Cal.App.2d 902, 904.)

---

[14] Forde only introduced the notice of default for 310 Jackson as an exhibit at trial. However, the other two default notices were attached to Forde's verified complaint. The dates of these notices does not seem to be in dispute.

19

There is also evidence supporting Forde's claim that the loans were usurious. Forde testified that, in addition to the 10 percent interest rate stated in the notes, Entous required extra cash payments equivalent to an additional 2 to 5 percent interest on each loan. Forde testified that the additional cash payments were inaccurately reflected in the loan documentation that Entous prepared as payments "towards principal."

Entous did not dispute that Forde made the extra cash payments, but testified that Forde did so voluntarily. Entous claimed that he had "no idea" why Forde decided to make such extra cash payments.

Forde also introduced as an exhibit a handwritten document that he testified Entous prepared. The document contains a notation of "12%" concerning the note that appears to apply to 310 Jackson, and a notation of "15%" for the loans secured by 306 Jackson and 1129 Verdugo.

Thus, the record contains evidence that would support findings that: (1) the loans were usurious, and (2) at least two of the loans were not in default at the time Entous foreclosed. Had the trial court correctly applied the law, the court could therefore have found that Entous's foreclosures were wrongful.

Because the trial court's ruling on the tender requirement was both erroneous and prejudicial, we must reverse.

4.    **Proceedings on Remand**

As discussed, the trial court's ruling and the resulting Judgment decided only Forde's first five causes of action. Forde concedes that three of those causes of action—for quiet title, cancelation of instruments, and to set aside the trustee sales— are not at issue in this appeal.

Forde incorrectly states that he dismissed his fifth cause of action for slander of title pursuant to the settlement agreement. In fact, that cause of action was included in the Judgment. However, because Forde does not present any argument for reversal with respect to that cause of action, he has forfeited the issue. (*Singh v. Lipworth* (2005) 132 Cal.App.4th 40, 43, fn. 2.)

Forde does argue for reversal of the Judgment concerning his first cause of action for wrongful foreclosure. For the reasons discussed above, we agree that the Judgment must be reversed with respect to Forde's claim for damages on that cause of action. We therefore will reverse for trial on that legal claim.

None of Forde's other causes of action are at issue in this appeal. Forde appealed from the Judgment. The Judgment included only Forde's first five causes of action. Forde voluntarily dismissed his remaining causes of action—including his usury claim and his claim for breach of the covenant of good faith and fair dealing—to facilitate this appeal. Forde's arguments that he was not required to tender to maintain his claims for usury and for breach of the covenant of good faith and fair dealing are therefore both irrelevant and puzzling.

Moreover, even if Forde had purported to appeal from his own voluntary dismissal of his remaining claims, he could not show prejudice from the trial court's ruling affecting those claims. (See *Villano v. Waterman Convalescent Hospital, Inc.* (2010) 181 Cal.App.4th 1189, 1203–1204 [appellant could not show prejudice from an in limine ruling after stipulating to a judgment to facilitate appeal of the ruling].) Nothing in the trial court's decision from the first phase of trial precluded Forde from proceeding with his remaining legal claims for damages. After ruling on Forde's equitable claims, the trial court specifically

stated that Forde could "still get damages from the jury."  Indeed, trial was about to begin on Forde's usury claim when the parties entered into the settlement.

We will therefore reverse the Judgment, including the trial court's award of attorney fees to Entous as the prevailing party, and remand for trial on Forde's claim for damages for wrongful foreclosure.[15]  We leave for the trial court to decide the appropriate disposition of any motion by Forde to reassert the claims that he dismissed without prejudice pursuant to the settlement.

---

[15] In addition to reversal of the trial court's attorney fee award, Forde asks for an award of "fees" on appeal.  Forde offers no argument in support of that request.  Presumably the basis for such a fee award would be the loan agreements that were the ground for the trial court's award of fees to Entous as the prevailing party.  (See Civ. Code, § 1717.)  Forde settled his remaining equitable claim concerning 310 Jackson prior to this appeal, and, as a result of our decision in this appeal, there is not yet any prevailing party.  We therefore decline the request to award fees on appeal and leave to the trial court to decide any fee request on remand following final resolution of Forde's remaining claim.

## DISPOSITION

The Judgment is reversed. The case is remanded to the trial court for trial on Forde's claim for damages pursuant to his first cause of action for wrongful foreclosure. The trial court may exercise its discretion on remand in considering any motion by Forde to amend his Complaint to reassert the claims in his seventh cause of action (for breach of the covenant of good faith and fair dealing) and his ninth cause of action (for usury) concerning 306 Jackson and 1129 Verdugo, subject to any applicable statute of limitations defense. Forde is entitled to his costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.

23